UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

Case No. 13-20385

Honorable John Corbett O'Meara

v.

MANDENGO JEROME GREEN,

       Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

This matter came before the court on defendant Mandengo Jerome Green's July 31, 2013 motion to suppress and request for evidentiary hearing. The government filed a response September 27, 2013; and Defendant filed a reply October 21, 2013. The court granted Defendant's request for a Franks hearing; and the evidentiary hearing was held February 19, 2014. Testimony was taken from one witness, Sgt. Roy Harris, who had requested the search warrant.

**BACKGROUND FACTS**

On May 14, 2012, the Detroit Police Department Narcotics Unit Officers executed a search warrant at the home of defendant Mandengo Jerome Green located at 22*** Linwood in Eastpointe, Michigan. Police reports indicate that the search began with a knock and announce; however, when no response was given, the officers forcibly entered the home to conduct the search. No one was at the residence. During the search the officers recovered a loaded, .40-caliber firearm in a nightstand located next to the bed in an upstairs bedroom. They also found a jail-issued photo ID of defendant Green in the nightstand. The officers confiscated $4000 in cash; proof of residence; a black, digital scale from the basement utility room; and approximately 1 gram of marijuana, found

in a Ziplock bag in the kitchen. Defendant was subsequently indicted on one count of Unlawful Transport of Firearms.

The raid was executed pursuant to a search warrant and affidavit sworn by Sgt. Roy Harris of the Detroit Police Department. In the affidavit, Sgt. Harris alleged that he sought entry into Green's home in Eastpointe to "secure, tabulate and make return according to law . . . all money, ledgers, document books, records, tally sheets, cell phones, video camera, and anything else relating to the distribution, transporting, and delivery, all firearms and items establishing ownership, control, occupancy, or possession of the above described place."

In his affidavit, Sgt. Harris stated that he has had significant experience in the manufacturing, sales, and trafficking of narcotics and "is able to identify by sight" distribution tactics employed during such trafficking. He stated that during the months of January, February, March, April and May 2012, he conducted long-term surveillance of Green in the area of Maine, Carpenter, Halleck and Burnside Streets in Detroit, Michigan. Sgt. Harris' affidavit also states that on May 8, 2012, he conducted surveillance on Green in the area of 12335 Maine, where Green's family members reside. Beginning May 9, 2012, Sgt. Harris saw Green leave the Linwood address "holding a black bag," enter a 2003 van and drive to Belleview Elementary School, where he dropped off a child. Green then proceeded to make stops at 12335, 12339 and 12494 Maine, in addition to one house south of 12291 Maine and also one on Carpenter at Goddard. He alleged that at each location "Mr. Green will exit his van and carry a small black bag of suspected narcotics into each house." He further alleged that "while sitting in his van at Carpenter and Goddard, an unknown black female will approach the driver's side of his van at which time Mr. Green will hand her a small black bag of

suspected narcotics. The unknown female then left the area." Sgt. Harris claimed to have observed "Mr. Green conduct the same activity on May 10, 2012, May 11, 2012 and May 14, 2012."

Sgt. Harris also stated that in June 2011 he had participated in the execution of a search warrant at the home on 12339 Maine, resulting in the arrest of an individual for drug violations. That search recovered 149 grams of cocaine, 406 grams of marijuana, along with a handgun and a rifle. Sgt. Harris went on to state that "upon arrival . . . to execute the search warrant, affiant observed Mr. Green run from the house, enter [the 2003 van] and speed away. Affiant had previous knowledge that Mr. Green was a supplier of this location." He further claimed that officers of the Detroit Police Department have had previous encounters with Green and that he is known by DPD officers as a supplier of narcotics in the area of Maine and Carpenter.

Sgt. Harris concludes his affidavit by attesting that he has common knowledge that "upper level narcotic traffickers live at one location and store narcotics weapons and guns at a separate location to avoid police detection." He states that due to his expertise, training and knowledge, he finds that the activity described in his affidavit is consistent with the sales of narcotics and has probable cause to believe that narcotics are stored and sold from the 22*** Linwood address in Eastpointe, Michigan.

Judge Izetta Bright issued the search warrant and DPD officers executed the warrant on May 14, 2012. Green was initially charged in Macomb County 38th District Court with Felon in Possession of a Firearm; however, the state case was dismissed and referred for federal prosecution under the Detroit One initiative. An indictment was filed May 21, 2013, alleging one count of Felon in Possession of a Firearm.

3

In his motion to suppress evidence, defendant Green makes the following arguments: 1) the search warrant affidavit failed to provide probable cause to search the defendant's home for evidence of drug trafficking; 2) the affidavit in support of the warrant contained false information material to the judge's determination that probable cause existed to believe evidence of criminal activity would be found at the defendant's residence; and 3) the warrant was so lacking in indicia of probable cause that Sgt. Harris and the officers could not reasonably rely upon it.

## **LAW AND ANALYSIS**

An affidavit in support of a search warrant must allege facts establishing probable cause for the specific place to be searched. Zurcher v. Stanford Daily, 436 U.S. 547, 554-55 (1978). When applying the probable cause standard in criminal investigations, a search warrant is reasonable "only when there is 'probable cause' to believe that they will be uncovered in a particular dwelling." Id. Search warrants are not directed at persons; rather, they authorize the search of places for the seizure of things. United States v. Kahn, 415 U.S. 143, 155 n.15 (1974).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*). The affidavit must support that reasonable cause exists "to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely 'that the owner of the property is suspected of a crime.'" United States v. McPhearson, 469 F.3d 518, 524 (6th Cir. 2006).

In this case defendant Green argues that the search warrant was not supported by a nexus connecting the alleged criminal activity to the Linwood address. Although Green did reside at the

4

Linwood address, a nexus between alleged drug activity and his home may not be established simply because he was suspected of possessing narcotics. Sgt. Harris' affidavit fails to state that he observed any narcotics at that address or any drug activity there. In addition, Sgt. Harris acknowledged in his affidavit that, based on his training and experience, "upper level narcotics traffickers live at one location and store narcotics, weapons and guns at a separate location to avoid police detection." Based on his own assertion, therefore, Sgt. Harris had little basis for believing evidence of narcotics would be found at Green's residence.

Defendant Green also contends that the search warrant affidavit contained material false statements and omissions made intentionally or with reckless disregard for the truth. See Franks v. Delaware, 438 U.S. 154, 171 (1978). The Fourth Amendment requires a court to conduct an evidentiary hearing to allow a defendant to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." United States v. Mastromatteo, 538 F.3d 535, 545 (6th Cir. 2008). If the defendant is able to establish "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence" at the hearing, the false material must be set aside; and the affidavit's remaining content must be evaluated to determine whether it is sufficient to establish probable cause. Id.

Defendant Green first questions Sgt. Harris' broad assertions of a long-term surveillance of Green's activities. Sgt. Harris claimed to have surveilled him in January, February, March and April 2012. In fact, defendant Green was incarcerated by the Livingston County Sheriff's Department for 26 days between January 30, 2012, and February 24, 2012. Def's reply br., Ex. H. However,

5

even if Sgt. Harris recklessly disregarded the truth by including the four weeks Green was in jail, once that false material is set aside, the remaining content in the affidavit is evaluated to determine whether it is sufficient to establish probable cause.

The affidavit also states that Sgt. Harris surveilled Green on May 9, 10, 11, and 14; but his Activity Logs do not reflect that Sgt. Harris engaged in any surveillance on that day. Sgt. Harris testified, however, that not all of his surveillance is recorded in his Activity Logs. He also stated in his affidavit that he observed Green stop at 12335 Maine on May 9, 10, 11 and 14; but no such address exists. Sgt. Harris testified at the evidentiary hearing that house numbers are often missing, incomplete or incorrect and suggested that house numbers are sometimes changed in order to elude law enforcement investigations.

As to Sgt. Harris' claim that he saw defendant Green a year earlier running from a house that was being searched and driving off in the same van described in the affidavit for the search warrant, Defendant asserts that none of the seven officers' reports filed after execution of that search warrant mentions Green or anyone else running from the house at the time the warrant was executed. Sgt. Harris' own report of the June 14, 2011 search makes no mention of Green or a person fleeing the scene. Again, however, Sgt. Harris has testified that not every detail may be included in his or the other officers' previous reports.

Sgt. Harris' affidavit for search warrant in this case is less than perfect. However, there is no evidence to show that he made false statements knowingly and intentionally or with reckless disregard for the truth. Moreover, the deficiencies in his affidavit were not material to the state judge's determination that probable cause existed to believe evidence of criminal activity would be found at the defendant's residence.

Even if the court found that the affidavit failed to establish probable cause, the evidence here would not be suppressed because law enforcement officers relied on the warrant in good faith. In United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court held that the exclusionary rule does not apply in cases in which officers acted in good faith and reasonably relied on a search warrant that was ultimately found invalid.

An officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable under four circumstances: 1) when the warrant is issued on the basis of an affidavit that the affiant knows contains false information; 2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid. United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005). Because the "so lacking in indicia of probable cause" test in the good faith analysis is less demanding than the "substantial basis" test required to support the affidavit in the first place, "it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good faith' reliance." United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004).

The United States Court of Appeals for the Sixth Circuit has held that evidence should not be excluded "to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" United States v. Master, 614 F.3d 236, 242-43 (6th Cir. 2010). In this case defendant Green has failed to show that the officers executing this search warrant engaged in that kind of conduct. Therefore, the court must deny his motion to suppress evidence.

7

**ORDER**

It is hereby **ORDERED** that defendant Green's motion to suppress evidence is **DENIED.**

          s/John Corbett O'Meara
          United States District Judge

Date:  April 7, 2014

      I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, April 7, 2014, using the ECF system.

          s/William Barkholz
          Case Manager